UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| LUIS MANUEL G.S.,[1] | No. 1:26-cv-04303-TLN-JDP |
| Petitioner, | A# 222-557-007 |
| v. | |
| CHRISTOPHER CHESTNUT, et al., | **ORDER** |
| Respondents. | |

This matter is before the Court on Petitioner Luis Manuel G.S.'s ("Petitioner") Petition for Writ of Habeas Corpus ("the Petition"). (ECF No. 1.) Respondents filed an opposition. (ECF No. 9.) Petitioner replied. (ECF No. 10.) For the reasons set forth below, the Petition is GRANTED and Respondents are ordered to IMMEDIATELY RELEASE Petitioner.

///

///

---

[1]    The Court omits Petitioner's full name to protect sensitive personal information. *See* Memorandum Re: Privacy Concern Regarding Social Security and Immigration Opinions, Committee on Court Administration and Case Management, Judicial Conference of the United States (May 1, 2018), https://www.uscourts.gov/sites/default/files/18-cv-l-suggestion_cacm_0.pdf.

1

## I.   FACTUAL BACKGROUND

This matter arises out of Petitioner's challenge to his civil immigration detention. On March 23, 2007, Petitioner first entered in the United States on a valid work visa. (ECF No. 1-1.) Petitioner later returned home at or near the conclusion of the visa period. (ECF No. 1 at 8; ECF No. 9 at 1.) About June 2008, Petitioner again entered the United States, this time without inspection, and he has lived here ever since. (ECF No. 1 at 8.) Over the last 18 years, Petitioner moved in with his life partner in Utah and they started a family. (ECF No. 1-3.) Petitioner is the father to three minor U.S. citizen children, the youngest of whom is seven years old. (ECF No. 1-4.) Petitioner's only criminal history is a misdemeanor conviction for a traffic violation sustained in 2007, 19 years ago. (ECF No. 9-2.) Petitioner has no other criminal convictions. (*See id.*)

However, on April 21, 2026, Petitioner was pulled over by local law enforcement for an alleged traffic violation. (ECF No. 1-5.) Law enforcement arrested him as a result of his immigration status and detained him for transfer to U.S. Immigration and Customs Enforcement ("ICE"). (ECF No. 1 at 8.) The next day, ICE took Petitioner into custody and issued Petitioner a Notice to Appear, instituting removal proceedings against him. (ECF No. 1-6.)

Over the course of Petitioner's detention, ICE has not provided Petitioner with a bond hearing or other individualized custody hearing. (ECF No. 1 at 10.) Petitioner has now been detained for nearly two months without a hearing as to his detention. (*See id.* at 8–10.) Indeed, on May 21, 2026, Petitioner was taken before an immigration judge who denied Petitioner a custody redetermination hearing for lack of jurisdiction, based on agency policy. (*See* ECF No. 1-7.)

Petitioner's family is suffering in his absence, both emotionally and financially. (ECF No. 1-3.) Petitioner's partner is struggling to work and care for her minor children without her partner. (*Id.*) She has also suffered panic attacks and anxiety. (*Id.*) Petitioner's children are sad, disinterested in eating, and unable to focus at school, due to the absence of their father. (*Id.*)

Petitioner now challenges the lawfulness of his civil detention without a hearing. (ECF No. 1.)

///

2

## II.    STANDARD OF LAW

The Constitution guarantees the availability of the writ of habeas corpus "to every individual detained within the United States." *Hamdi v. Rumsfeld*, 542 U.S. 507, 525 (2004) (citing U.S. Const., Art I, § 9, cl. 2). "The essence of habeas corpus is an attack by a person in custody upon the legality of that custody, and . . . the traditional function of the writ is to secure release from illegal custody." *Preiser v. Rodriguez*, 411 U.S. 475, 484 (1973). A writ of habeas corpus may be granted to a petitioner who demonstrates that he is in custody in violation of the Constitution or federal law. 28 U.S.C. § 2241(c)(3). Historically, "the writ of habeas corpus has served as a means of reviewing the legality of Executive detention, and it is in that context that its protections have been strongest." *I.N.S. v. St. Cyr*, 533 U.S. 289, 301 (2001). Accordingly, a district court's habeas jurisdiction includes challenges to immigration detention. *See Zadvydas v. Davis*, 533 U.S. 678, 687 (2001).

## III.    ANALYSIS

Petitioner claims his detention without a hearing violates the Immigration and Nationality Act ("INA") and the Fifth Amendment Due Process Clause.[2] (ECF No. 1 at 16–19.) Respondents contend Petitioner is subject to mandatory detention without a hearing. (ECF No. 9 at 2.) The Court addresses each claim in turn.

### A.    Immigration and Nationality Act Violation

Petitioner alleges that his detention should be governed by 8 U.S.C. §1226(a) and Respondents' application of 8 U.S.C. § 1225(b)(2) to Petitioner's detention is ultra vires as contrary to the INA's text, structure, and history. (ECF No. 1 at 16–19.) Respondents acknowledge that many courts, including in this District have held to the contrary, but maintain Petitioner is subject to mandatory detention under 8 U.S.C. § 1225(b)(2). (ECF No. 9 at 2.) The Court, once again, agrees with the arguments advanced by Petitioner.

---

[2]    Petitioner makes both a procedural due process claim (Count II) as well as a substantive due process claim (Count III), as well as a claim for impermissible retroactive application of *Matter of Yajure Hurtado* (Count IV). (ECF No. 1.) Because the Court finds relief warranted under the INA and procedural due process claims (Counts I and II), the Court declines to assess cumulative claims (Counts III and IV) in favor of judicial economy.

3

Under the INA, 8 U.S.C. § 1226(a) "provides the general process for arresting and detaining [noncitizens] who are present in the United States and eligible for removal." *Rodriguez Diaz v. Garland*, 53 F.4th 1189, 1196 (9th Cir. 2022).  Section 1226(a) provides the Government broad discretion whether to release or detain the individual and it provides several layers of review for an initial custody determination.  *Id.*  It also confers "an initial bond hearing before a neutral decisionmaker, the opportunity to be represented by counsel and to present evidence, the right to appeal, and the right to seek a new hearing when circumstances materially change."  *Id.* at 1202.

Conversely, 8 U.S.C. § 1225(b)(2) mandates detention during removal proceedings for "applicants for admission" who are "seeking admission" and does not provide for a bond hearing.

Until the U.S. Department of Homeland Security changed its policy in July 2025, the Government consistently applied § 1226(a), not § 1225(b)(2), to noncitizens residing in the United States who were detained by immigration authorities and subject to removal.

The vast majority of courts across this Circuit, including this one, have repeatedly rejected Respondents' argument on the applicability of § 1225(b)(2) to persons like Petitioner who reside in the United States.  *See, e.g.*, *Morales-Flores v. Lyons*, No. 1:25-CV-01640-TLN-EFB, 2025 WL 3552841, at *3 (E.D. Cal. Dec. 11, 2025) (explaining this Court's reasons for taking this position and collecting cases); *Brayan C. C. v. Warden of California City Corr. Ctr.*, No. 2:26-CV-00641-TLN-JDP, 2026 WL 710358, at *2–3 (E.D. Cal. Mar. 13, 2026) (finding same in the case of a noncitizen not previously released by immigration authorities).  "These courts examined the text, structure, agency application, and legislative history of 1225(b)(2) and concluded that it applies only to noncitizens 'seeking admission,' a category that does not include noncitizens like [Petitioner], living in the interior of the country."  *Salcedo Aceros v. Kaiser*, No. 25-CV-06924-EMC, 2025 WL 2637503, at *8 (N.D. Cal. Sept. 12, 2025) (collecting cases).

In comparison, "[t]he government's proposed reading of the statute (1) disregards the plain meaning of section 1225(b)(2)(A); (2) disregards the relationship between sections 1225 and 1226; (3) would render a recent amendment to section 1226(c) superfluous; and (4) is inconsistent with decades of prior statutory interpretation and practice." *Lepe v. Andrews*, No.

4

1:25-CV-01163-KES-SKO (HC), 2025 WL 2716910, at *4 (E.D. Cal. Sept. 23, 2025) (collecting cases).

For these reasons, and consistent with this Court's numerous prior rulings, the Court finds Petitioner is not an applicant for admission subject to mandatory detention under § 1225(b)(2), rather, Petitioner's detention is governed by § 1226(a). As Petitioner points out, Respondents own documents also support this finding. For example, Petitioner's charging document (Notice to Appear) identifies "removal proceedings under section 240 of the [INA]." (ECF No. 1-6.) INA Section 240 is the standard removal process, as compared to expedited processes, and § 1226 governs the apprehension and detention of those in standard removal proceedings. *Noori v. LaRose*, 807 F. Supp. 3d 1146, 1157 (S.D. Cal. 2025) (finding the standard removal process is "section 240 proceedings" under the INA); *Rodriguez Diaz v. Garland*, 53 F.4th 1189, 1196 (9th Cir. 2022) (finding § 1226 governs the apprehension and detention of those in standard removal proceedings). Additionally, Respondents' administrative warrant (Form I-200) is addressed to officers "authorized under sections 236 and 287 of the [INA]." (ECF No. 9-3.) Section 236 of the INA translates to 8 U.S.C. § 1226.

Accordingly, Petitioner is entitled to the process required by § 1226(a) including a bond hearing, at minimum. Yet, Respondents have not provided Petitioner any such bond or custody hearing in almost two months of detention. Indeed, he was denied a hearing on May 21, 2026 by an immigration judge. (ECF No. 1-7.) Consequently, Respondents have violated 8 U.S.C. § 1226(a).

B.      Fifth Amendment Violation

Petitioner alleges his detention, without any kind of hearing to justify it, violates the Fifth Amendment Due Process Clause. (ECF No. 1 at 19.) Respondents argue due process for Petitioner is coextensive with the applicable detention statute. (ECF No. 9 at 2 (citing *DHS v. Thuraissigiam*, 591 U.S. 103, 138–40 (2020)).)

Taking Respondents' argument first: Even assuming Respondents were correct in their assertion, they have violated due process because the Court has found that § 1226(a) is the governing detention authority (as the majority of courts in the Ninth Circuit have similarly held

5

for petitioners in analogous cases) and, even knowing this, Respondents have not provided the process owed by the statute, as discussed above.

However, Respondents' premise is flawed. "*Thuraissigiam*'s discussion of due process is necessarily constrained to challenges to admissibility to the United States" and "[t]he Court answered no broader question." *Padilla v. ICE*, 704 F. Supp. 3d 1163, 1171–72 (W.D. Wash. 2023). *Thuraissigiam* "does not foreclose . . . due process claims which seek to vindicate a right to a bond hearing with certain procedural protections." *Id.* at 1172. Thus, the Court proceeds in assessing whether Petitioner's Fifth Amendment procedural due process rights were violated.

The Fifth Amendment prohibits government deprivation of an individual's life, liberty, or property without due process of law. U.S. Const. amend. V; *Hernandez v. Sessions*, 872 F.3d 976, 990 (9th Cir. 2017). The Due Process Clause applies to all "persons" within the borders of the United States, regardless of immigration status. *Zadvydas,* 533 U.S. at 693. These due process rights extend to immigration proceedings and detention. *Id.* at 693–94.

Courts examine procedural due process claims in two steps: the first asks whether there exists a protected liberty interest under the Due Process Clause, and the second examines the procedures necessary to ensure any deprivation of that protected liberty interest accords with the Constitution. *See Kentucky Dep't of Corrections v. Thompson*, 490 U.S. 454, 460 (1989); *Morrissey v. Brewer*, 408 U.S. 471, 481 (1972) ("Once it is determined that due process applies, the question remains what process is due.").

### i. Liberty Interest

As for the first step, the Court finds Petitioner has a protectable liberty interest. "[F]reedom from imprisonment is at the 'core of the liberty protected by the Due Process Clause.'" *Hernandez*, 872 F.3d at 993 (citing *Foucha v. Louisiana*, 504 U.S. 71, 80 (1992)). "Even where the revocation of a person's freedom is authorized by statute, that person may retain a protected liberty interest under the Due Process Clause." *See Rico-Tapia v. Smith*, No. 25-CV-00379 SASP-KJM, 2025 WL 2950089, at *8 (D. Haw. Oct. 10, 2025). Liberty interest may be strengthened over time. *See, e.g., Doe v. Becerra*, 787 F. Supp. 3d 1083, 1093 (E.D. Cal. 2025) (noting the Government's actions in allowing petitioner to remain in the community for over five

6

years strengthened petitioner's liberty interest).

The Court finds Petitioner has a clear liberty interest in his continued freedom protected by the Due Process Clause.  Petitioner has lived in the United States for nearly two decades during which time he maintained a residence, started a family, built a life, and worked to provide and care for his family.  In opposition, Respondents conclude, without explanation or authority, that Petitioner does not have a liberty interest in remaining out of custody during removal proceedings.  (ECF No. 9 at 3.)  But Petitioner's liberty interest is not automatically extinguished by Respondent's unilateral institution of removal proceedings.  Even if Petitioner is subject to removal or his freedom could be revoked by statute, Petitioner's liberty is still protected by the Due Process Clause.  *See Hernandez*, 872 F.3d at 993, *Zadvydas*, 533 U.S. at 693.

With a clear liberty interest, the Court next turns to the procedural safeguards that were owed to Petitioner.

### ii.    Procedures Required

As to the second step — what procedures or process is due — the Court considers three factors: (1) "the private interest that will be affected by the official action;" (2) "the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards;" and (3) "the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail." *Mathews v. Eldridge*, 424 U.S. 319, 335 (1976).

First, as explained above, Petitioner has a substantial private interest in his own liberty that is unquestionably affected by Respondents' actions detaining him.  Despite his interest in maintaining his liberty, Petitioner has now been detained for nearly two months without any opportunity to be heard as to his detention.  While in detention, he is unable to work and provide for his family.  Accordingly, this factor weighs strongly in favor of finding Petitioner's private interest has been impacted by his detention.  *See Manzanarez v. Bondi*, No. 1:25-CV-01536-DC-CKD (HC), 2025 WL 3247258, at *4 (E.D. Cal. Nov. 20, 2025) (finding similarly).

Second, the risk of erroneous deprivation is significant given Petitioner has not received any process, either pre- or post-detention.  Because civil immigration detention is "nonpunitive in

purpose and effect," a "special justification" must outweigh Petitioner's protected liberty interest in order for detention to comport with due process. *Zadvydas*, 533 U.S. at 690. Where removal is not imminent under a final order of removal, "[t]he government has no legitimate interest in detaining individuals who have been determined not to be a danger to the community and whose appearance at future immigration proceedings can be reasonably ensured by [ ] bond or alternative conditions." *Hernandez*, 872 F.3d at 994. Here, Petitioner is not subject to an order of removal; his immigration proceedings are still pending. Petitioner has negligible criminal history over his nearly two decades of living in this country — only a misdemeanor traffic violation. Additionally, Respondents do not argue that Petitioner is a danger to the public or a flight risk. (*See* ECF No. 9.) Therefore, the risk that he is being detained without proper justification is high. *A.E. v. Andrews*, No. 1:25-CV-00107-KES-SKO, 2025 WL 1424382, at *5 (E.D. Cal. May 16, 2025).

Finally, the government's interest is low, and the effort and cost required to provide Petitioner with procedural safeguards are minimal. *See Garcia v. Andrews*, No. 2:25-CV-01884-TLN-SCR, 2025 WL 1927596, at *5 (E.D. Cal. July 14, 2025). Although the Court recognizes the government's interest in immigration enforcement, that interest does not outweigh all procedural safeguards. Notice and custody determination hearings are routine processes for Respondents and are indeed the very processes required under § 1226(a). Any delay in detention (if justified) for the time to provide notice and a hearing would have been minimal. Any burden associated with the provision of these processes does not outweigh Petitioner's substantial liberty interest and the risk of erroneous deprivation.

At a minimum, due process required notice and a hearing as to Petitioner's detention. Respondents did not provide Petitioner any hearing — either pre- or post-deprivation — over nearly two months of detention. Rather, an immigration judge explicitly denied Petitioner's request for a hearing. Therefore, Respondents violated the Fifth Amendment and Petitioner's procedural due process rights.

**IV.    CONCLUSION**

Respondents have detained Petitioner in violation of federal law and the Fifth

Amendment.  Accordingly, IT IS HEREBY ORDERED:

1. The Petititon for Writ of Habeas Corpus (ECF No. 1) is GRANTED.[3]

2. Respondents must IMMEDIATELY RELEASE Petitioner Luis Manuel G.S. (A# 222-557-007) from custody.[4]  At the time of release, Respondents must return all of Petitioner's documents and possessions.

3. To avoid further irreparable harm and protect the public interest, Respondents are ENJOINED from re-detaining Petitioner absent compliance with constitutional protections, including a minimum of seven-days' notice and a pre-deprivation hearing before a neutral fact-finder where: (a) Respondents show material changed circumstances demonstrate a significant likelihood of Petitioner's removal in the reasonably foreseeable future, or (b) Respondents demonstrate by clear and convincing evidence that the government's interest in protecting the public or ensuring Petitioner appears at future immigration proceedings outweighs his constitutionally protected interest in remaining free from detention.  *Zadvydas*, 533 U.S. at 690; *Hernandez*, 872 F.3d at 990.  At any such hearing, Petitioner shall be allowed to have counsel present.

4. The Clerk is directed to serve this Order on the **California City Corrections Center**.

5. The Clerk of the Court shall enter judgment in favor of Petitioner and close this case.

///

///

---

[3]    Petitioner also seeks an award of attorney's fees and costs under the Equal Access to Justice Act.  (ECF No. 1 at 23.)  The Court will consider any timely filed request for fees and costs on a properly noticed and supported motion.

[4]    Respondents ask this Court to grant a bond hearing rather than release. (ECF No. 9 at 3.) The Court will not give Respondents a free pass to deny Petitioner his statutory and constitutional rights first and comply with the law later, only after Petitioner is forced to seek judicial relief. The appropriate remedy in this case is not to bring the government into conformity with its governing statutes; it is to release Petitioner from unlawful custody.  *See Dinesh S. v. Chestnut*, No. 1:26-CV-01717-TLN-EFB, 2026 WL 1028016, at *3 (E.D. Cal. Apr. 16, 2026) (citing *Quijada Cordoba v. Knight*, 809 F. Supp. 3d 1110, 1122 (D. Idaho 2025) (ordering release of detainee challenging his detention without a bond hearing and collecting cases); *Briceno Solano v. Mason*, No. 2:26-CV-00045, 2026 WL 311624, at *20 (S.D.W. Va. Feb. 4, 2026) (ordering release and rejecting the Government's argument that a bond hearing is the appropriate remedy)).

9

IT IS SO ORDERED.

Date: June 12, 2026

_____
TROY L. NUNLEY
CHIEF UNITED STATES DISTRICT JUDGE